Good morning. May it please the Court, Michael von Lohenfeld for Las Virginas Trifuno Joint Powers Authority. I'd like to reserve about four minutes for rebuttal, if I may. All right, please watch the clock. Yes, Your Honor. Thank you. Your Honors, we're here in a dispute over a consent decree that was amended in 2010 to purportedly authorize the EPA to issue in 2013 a TMDL that California had stated it would issue in 2021. Las Virginas contends that the Court had no subject matter jurisdiction because there was no waiver of sovereign immunity and therefore should not have authorized the EPA to jump the gun by eight years and enter its TMDL, again, eight years before California said it would be doing that. Can I ask you what exactly are you appealing from? Yes, Your Honor. The order we're appealing from is the 12H3, the final order was the 12H3 motion denial, but that would incorporate in it the earlier non-appealable interlocutory order denying our motion to intervene. Why wasn't that motion to intervene immediately appealable? Because to be immediately appealable. Denial of the motion to intervene immediately appealable. Right, right. That's actually this Court's jurisdiction, which it usually would be. But under Stringfellow and the collateral order doctrine, you know, there is no denial of a motion to intervene. It's a collateral order issue. So the collateral order doctrine requires that the issue be finally disposed of. And that's what the Court says in Stringfellow. Your ability to intervene finally disposed of? The ability to intervene was finally disposed of, but our challenge to the jurisdiction was not. At page 30 of the record, the District Court expressly left that door open. It expressly reserved the question of our ability to challenge had brought an appeal on the denial of motion to intervene, the appellees would be here arguing that the appeal was untimely, was unrighteous. Why didn't you just file a protective appeal? The decision was made at the time not to do that, Your Honor, because the judge had expressly directed us that we could file the 12H3 motion, and the decision was made to do what the District Court told us to do. So I think that that and that order is clearly a final order. It's a collateral order. It finally disposes the issue, and there's no further ability for us to act in the District Court. So, you know, I don't believe it's the case that we're or my client's required to disregard the instructions of the District Court. I don't think the language is so strong as to be an instruction. It just said that a nonparty can challenge subject matter jurisdiction under Rule 12H3. It didn't instruct you to do that. Your Honor, at page 16 of the Court's order, which is ER30, line 9, the Court says, quote, the Court finds it is more appropriate for Las Virginias to file a duly noticed motion in accordance with the local rules after the parties have had an opportunity to meet and confer on this issue as required by the Court's standing orders. Look at lines 4 through 6. While a challenge may be made to the Court's subject matter jurisdiction under 12H3 by a nonparty, well, if you were not allowed to intervene, you would still be a nonparty, wouldn't you? That is correct, Your Honor. Okay. So the intervention should have had no effect on your ability to file the 12H3. So if you wish to appeal the denial of the motion to intervene, you should have appealed it immediately. Well, I think what we're trying to appeal is the Court's refusal to address its subject matter jurisdiction, which the Court declines to address both in this order that we're looking at and in the order on the 12H3 motion. Whether or not we're an intervener  Okay. But the important point is that the motion is not relevant to us. The motion denying your motion to intervene was included in that order. Obviously, it was important to you because you mentioned in your opening statement. So are you here on the motion to intervene or not here on the motion to intervene? We're here on the jurisdictional issue, which was raised both in the 12H motion and on the motion to intervene, and we believe the Court erred on both motions by failing to address it. The Court has an independent duty to address its jurisdiction. The district court here did not do that. It didn't do it when it entered the consent decree. It didn't do it in 2010. Well, you were you're you represent Las Virginas, right? Yes, Your Honor. Weren't you on notice a long time ago that this was going on and that potentially the Malibu Creek area would be affected? We weren't, Your Honor, and here's why. There's a declaration that we submitted below. It's at ER 615 through 617, and it discusses the evolution of this TMDL. Las Virginas clearly knew that the consent decree had been amended in 2010. What they didn't know is that the benthic macroinvertebrate TMDL was going to affect nitrogen and phosphorus levels. Nitrogen and phosphorus levels had already been regulated by a prior TMDL that was incorporated into our permit. That's the issue that concerned us. We didn't learn that EPA was going to propose new nitrogen and phosphorus levels in connection with the BMI TMDL, and I apologize for the alphabet soup, until shortly before we moved to intervene. So that, you know, we are actually attacked in this case both for being too late and for having no interest. And I would put it to the court, we can't have it both ways. We waited until our interest was clear. It was clear that what the EPA was doing was going to negatively affect our client, and at that point, they moved to intervene. But the district court had its own obligation to analyze these issues, and essentially what's being argued is because it's a consent decree and the parties don't want anyone to look at that issue, that's just not subject to review. That can't be the case. It cannot be the case that my client has the right to raise this issue, to bring it to the district court's attention. The district court can affirmatively say I am not going to address my jurisdiction, as the court did in a footnote in the denial of our 12H3 motion, and then that would be subject to no review whatsoever. So what's your remedy? Our remedy is for the, well, we would like the court to address the subject matter jurisdiction. We believe there's clearly none, because there was no nondiscretionary duty here, and that would mean the consent order is void under clear law. Not voidable, void. But it's already been, it's expired, and it's already, everybody's taken all the actions, it's all about timing of when they're going to take their actions. Everybody's already taken all their timing, they've complied with the timing terms of the consent decree, and it expired by its own terms after it was amended. So what can this court do for you? So the consent decree is not just about timing. The consent decree sets a deadline and then authorizes the EPA to issue the TMDL if the deadline is not met. And they did that knowing full well that California was going to issue its TMDL in 2021, not 2013. So the consent decree authorizes the Malibu Creek TMDL. That TMDL is invalid, because the consent decree authorizing it was void. And you can't bootstrap from an illegal consent decree that is beyond the jurisdiction of the court to a TMDL by calling it timing. It's not just timing. And even if it is timing, I apologize. So what are the constraints on EPA issuing a TMDL? EPA is supposed to wait, if the state is doing it, EPA is supposed to wait until the And then if it disapproves it, then it can issue its own. But here, here, the state of California had clearly stated that it was going to issue this TMDL in 2021. And what happened is the parties to this case ran to court to jump the gun on the state of California, even though it was going to issue it five years from now. Yes, Your Honor. That seems a little odd to me. Your Honor, these are complex issues. These are issues that require more time to, frankly, make limits that are capable of being met. Now, remember, we're a waste treatment facility. You know, we're not building something that we can just stop making. It's critical that the waste treatment facility operate. And the proposals, the limits set by the EPA, you know, the declaration before the court shows they're going to cost $160 million for my client to implement. That's not possible for it to do. When is your client supposed to implement it? So the way it works is the TMDL is then used by the state to set a permit. That process is still ongoing. Can't you go to the state and challenge it there? Well, we could accept that the state feels handcuffed by the TMDL. That's exactly the problem. The EPA has issued this TMDL, which the state authorities believe they have to follow, even if the limits aren't reasonable. And so... Can the state decline to enforce the TMDL? I think the state takes the position that it cannot. And EPA, when it reviews, it's my understanding, and my understanding is that when EPA reviews whatever the state does, you know, that there's supposed to be consistency. That's the purpose of the TMDL. But the reason the EPA is supposed to go second is to let the state do that first, especially where here the state says... If the state declines to do so, then EPA can step in. If the state declines to do so, but that's not what happened here, Your Honor. Well, first off, I should say... Well, the state announcing that it'll issue it in five years or eight years or ten years doesn't exactly sound like the state is intending to do it. Well, Your Honor, I have to respectfully disagree with that. So first off, the Baykeeper's case makes it clear that this constructive submission doctrine only applies where there's a total refusal to comply and issue any TMDLs. So there is no constructive submission doctrine here that would support the EPA stepping in. But I would also suggest, Your Honor, that these are more complicated issues than your question suggests. So was California ordering a phase-in for which the final step would be 2021? California has a whole string of water areas and pollutants that it's looking at, and it published... They're in the record. What year did it announce that it would issue the TMDL in 2021? I believe the 2000, Your Honor. In 2000? I'm sorry. I misspoke. 2010, Your Honor. 2010 was when they made the announcement. They announced that in 11 years they would get around to issuing the TMDL. Well, it's not get around to issuing it, Your Honor. These aren't instant things. They take study. They take discussion. There is a reasoned approach to doing it. There is no duty for the state to simply rush to file some standard. And remember, there already was an existing TMDL covering nitrogen and phosphorus. So what we're really talking about, actually, is increasing the existing standard. We're not talking about a waterway that has no standard. Can EPA make a decision that California's delay is unacceptable and therefore is effectively not agreed, effectively has not issued the TMDL it's required to issue? So I'm going to dodge and split your question a little bit. If EPA can make that decision, that would be a discretionary decision, not a nondiscretionary one. And the court has no jurisdiction to have a suit against EPA for a discretionary decision because the waiver of sovereign immunity only applies to nondiscretionary acts. So it may be the case, Your Honor, and I have to confess, I just don't know. It may be the case that EPA could discretionarily make that decision, but that doesn't convert that into a mandatory act, a nondiscretionary duty. And that is the only thing the court has jurisdiction to hear, are challenges to failure. Has the State of California weighed in on this question? Not to my knowledge, Your Honor. Okay. So California hasn't objected to EPA issuing the TMDL? California has not intervened in this case and is not a party to this case. Did they object in any other way? Not to my knowledge. Okay. So they acquiesced in it. Well, I don't agree with that, Your Honor, because my lack of knowledge doesn't mean the State acquiesced. There's nothing in the record in this case that indicates California took a position. And you're unhappy because the consent decree forced EPA to do something that you think it only had discretion to do and wasn't mandatory upon it? We're unhappy because this consent decree allowed EPA to essentially jump the gun on the State of California and issue a TMDL long before the process, the State process, where my client would have a right to participate and to argue that it was economically unfeasible and to try to work with the State to engage in standards that made sense and were capable of being performed, was not followed. All right. You have, you're kind of reserved four minutes. You have two and a half. Thank you, Your Honor. Good morning. I'm David Gunter from the Department of Justice here on behalf of EPA. I plan to spend 10 minutes this morning before I turn the podium over to my colleague, Ms. Tallman, and make three points. The court doesn't have appellate jurisdiction. The district court was within its discretion to deny intervention, and the district court was right to deny the Rule 12 motion. And as the court has already found, there's a lot of ground to cover there. But there are two key facts that cut across all of these issues and can inform the court about each of them. First, Las Vergenas simply waited too long to participate in this case. It began in 1998, and it settled in 1999. The last consent decree amendment was 2010, and Las Vergenas did not seek to participate until 2013. And second, the consent decree is terminated. It is about timing, and the deadline that it set for EPA's action has passed. Clearly, Las Vergenas has an interest in the TMDL, but that's not the same as the deadline. And in fact, they're challenging the TMDL in a separate case that is already on appeal before this court, and more squarely presents some of the issues that you've already been discussing with their counsel this morning. They're challenging the TMDL versus the EPA in another case? That's right. There's a case in which they are challenging EPA's authority to issue the TMDL. The district court has upheld EPA's authority, and they have already filed a notice of appeal. It's currently actually in the Ninth Circuit's mediation program, and may soon be assigned to a panel. But for purposes of this case, what they're challenging is just the consent decree. And vacating the consent decree will not vacate the underlying TMDL that actually causes them harm. Does the consent decree have any life at all? For example, if the EPA were to decide that we needed more TMDLs in the Los Angeles region, could it accomplish that by seeking to amend the consent decree again? No, the consent decree is relief against EPA. And we view it that we have completed all of our obligations under that consent decree. So if EPA thought that more TMDLs were required, there may certainly be regulatory actions that it could take. But that would not be a consent decree amendment. It wouldn't affect anything to do with the consent decree. That's right. Our view is that this consent decree is over, and this case is over. And we filed a notice of termination with the district court to that effect. And so to bring this back around to the court's appellate jurisdiction, that really creates a problem for Las Vergenas in bringing their appeal. And there are two reasons for that. One is that they never were granted party status before the district court. And a non-party can't appeal the merits. The rule here is from City of Oakland, and it's plain. Once a party has sought to intervene and been denied, it has to appeal the denial of intervention or it has lost its appeal right. And this court said that an order terminating the non-party's participation in the case by denying intervention bars the applicant from appealing the later judgment. Now- So your opposing counsel argues that neither you nor Heald the Bay had any incentive to challenge the district court's jurisdiction in this case. Whether or not that's true, it may be true. To what extent was the district court obligated to examine its own jurisdiction here, and did it have jurisdiction? I think that when the only question is whether the parties want to settle a case, the court's Oregon precedent says that the district court's role is simply to determine whether the settlement is fair and reasonable. I think if it were obviously a case in which there was no subject matter jurisdiction, then the district court could refuse to allow the parties to settle. But that- But doesn't it have to order the, I mean, it has to issue the decree. That's acting. It has to have jurisdiction to act. That's right. And I think if it had ordered the parties to do that here, we would have said that Congress has clearly waived sovereign immunity for claims of this type. That we should not be required to litigate essentially the merits of the claim, that is, whether there's a duty in order to settle it. How have they waived? Is it simply the allegation that EPA has failed to act, or that the state's failed to act? Well, under the well-pleaded complaint rule, the court has subject matter jurisdiction over, it's plaintiff's allegations that get them into court. They have to have a well-pleaded complaint that states a cause of action for which Congress has waived sovereign immunity. And under this court's law, as it existed in 1998, it appeared that Heal the Bay at least had a colorable claim. But I think that the questions you're asking, Judge Wardlaw, really get to the timing issues in this case as well, because you're right. If the parties want to settle, then there's no incentive for them to raise to the district court that issue and say, make us litigate this issue. And it doesn't serve the courts well to force two parties to litigate a question on which they agree. Instead, the rules provide a time for other parties to come in and raise that issue to the court at an appropriate time. Rule 12H3 allows a non-party to raise that issue during the litigation. And one of the key problems in this case is that Las Virginas didn't do that. It simply waited too long. And so now, EPA and Heal the Bay face a situation where we're looking at a dispute we thought was settled 15 years ago being reopened to litigation before the courts. Now, another reason the timing is relevant in this case is that that long lapse of time has made it so that the case is moot. The question of whether the consent decree is valid or not can no longer be an appropriate subject for this court's jurisdiction, because there's no relief that this court could order that would give Las Virginas any relief. And on this question, I really want to turn the court's attention to the 11th Circuit's decision in Florida Wildlife Federation. It was a case like this one. Some state agencies came in and challenged a consent decree on the grounds that they didn't like the water quality standards that EPA set pursuant to that consent decree's deadline. And the 11th Circuit said, we don't have subject matter jurisdiction over this question because the water quality standards have been made. You can't unring the bell, is what the 11th Circuit said. If you want to challenge the water quality standards, you have to challenge them and not the consent decree, because all the consent decree did was set a deadline. And the same is true here. Las Virginas can and should bring these arguments in their TMDL challenge. EPA is not here saying this TMDL is unchallengeable. EPA is only here saying this is the wrong vehicle to do it. And as a result, the court lacks jurisdiction over that question. I'll turn briefly back to the denial of intervention, because the timeliness question that's involved in the denial of intervention is one on which the district  Now, the plaintiffs, I'm sorry, Las Virginas has said that they timely appealed the denial of intervention because the district court allowed them to participate in some other capacity. But that's not what this court's precedent in the city of Oakland requires. An amicus doesn't necessarily gain appeal rights. And similarly, a non-party simply by filing a Rule 12H3 motion can't gain appeal rights. What it needs to do is move to intervene, and then if the court denies intervention, as it did here, immediately appeal that order, even if the court allows it to participate in some other capacity. That's not contrary, as counsel said, to the Supreme Court's decision in Stringfellow. In Stringfellow, the litigant that had come in and sought intervention had actually been granted intervention. They'd just been granted permissive intervention with limits. But that still carried with it the right to appeal. Whereas here, the kind of participation that the district court allowed Las Virginas did not carry with it the right to appeal. And as a result, they needed to appeal immediately. Because they didn't do so, they are too late to come to this court. Counsel also raised the question of whether they had adequate notice in 2010 of their interest in this appeal. Now, they may not have noticed, they may not have known in 2010 exactly what the TNDL would have looked like in 2013. But on that question, this court might look at its own decision in California Department of Toxic Substances, where a party that sought to intervene late was denied. And they said, well, we didn't know exactly what the final settlement would look like between EPA and the polluting parties. And so we didn't know that we had an interest in this. And the court said, no, you should have intervened earlier because you knew that there was a settlement. You knew that these negotiations were going on. And likewise here, there's a letter in the Supplemental Extracts of Record that shows that Las Vergenas knew in 2010 that EPA was making the TNDL and also knew that EPA was going to do something that Las Vergenas thought it did not have authority to do. It could clearly at that time have sought to intervene and participate before the district court to protect its interests. But it didn't do that until the TNDL was almost complete. And in fact, EPA had spent thousands of hours trying to comply with its obligation under that TNDL, to establish that TNDL. I see that my time is almost up. And so let me leave the court with this thought. Las Vergenas' theory here is that if they want to raise an issue of subject matter jurisdiction, there are literally no limits on their ability to do that. Standing doesn't matter. Mootness doesn't matter. Timeliness doesn't matter. They don't have to be a proper party. Now, certainly subject matter jurisdiction is important, but the rules provide times that are appropriate for parties and non-parties to raise those issues. And those doctrines exist so that parties like EPA and Heal the Bay can settle their disputes without having to worry that they'll be hauled into court two decades later to try and undo the settlement that they've reached. For that reason, the district court was right to deny intervention and was right to deny the Rule 12 motion. This court would also be on solid ground finding that Las Vergenas doesn't have a proper appeal that this court has jurisdiction to hear. And for those reasons, the district court's judgment should be affirmed. Thank you. May it please the court, Sarah Tallman on behalf of Heal the Bay and LA Waterkeeper. I want to turn back to the threshold issue of mootness in this case. There is no effective relief that this court can grant to Las Vergenas. Because the consent decree has already expired on its own terms, there is no longer a consent decree to vacate. Even if this court were to grant Las Vergenas what it wants and say the consent decree was void or to vacate it, that wouldn't have any practical effect on the ground for Las Vergenas. That's because the consent decree did not make the TMDL valid. What authorized the TMDL is the Clean Water Act and Section 303D. In 2010, when the state of California listed Malibu Creek on its Section 303D list, the Clean Water Act required a TMDL. And it gave the state of California, in the first instance, the obligation to issue that TMDL. When the state failed to timely do so, EPA, in its discretion, used its authority under the Clean Water Act to issue that TMDL. And this dispute over whether or not EPA had the authority to issue the TMDL will be litigated in Las Vergenas' affirmative challenge to the TMDL in the other case. So all of Las Vergenas' concerns about EPA's, quote, jumping the gun, will be litigated in the other case. So it will have the opportunity to get judicial review of that question. So because the consent decree has no effect on the validity of the TMDL, there is simply no effective relief that this court can grant to Las Vergenas. And accordingly, the case is moot, and this court lacks jurisdiction to resolve the substantive issues that Las Vergenas wants to litigate. Moreover, this court, as my colleague stated, lacks jurisdiction over the appeal from the motion to intervene because that appeal was untimely, and it lacks jurisdiction to consider the appeal from the 12H3 motion because Las Vergenas never became a party below. That means that Las Vergenas cannot appeal subsequent judgments from the district court, and it failed to protect its rights to subsequently appeal by immediately appealing the denial of its motion to intervene. In any event, even if this court were to get to the substantive, evaluate the district court's orders on the merits, the district court was well within its discretion to deny both the motion to intervene and the 12H3 motion. The motion to intervene was simply filed way too late. At the very latest, Las Vergenas knew that the consent decree contemplated an additional or revised TMDL for Malibu Creek in 2010, yet it waited several years until 2013, just a few weeks before EPA was set to issue the TMDL to seek to intervene. And the district court, in its discretion, determined that that was too late and that the motion to intervene was untimely. The district court also properly denied the 12H3 motion without getting to the underlying jurisdictional challenge. That's because after a final judgment, and the consent decree was a final judgment, the only way to seek relief from that judgment is through a rule under 60, or a motion under Rule 60B. So the district court properly construed Las Vergenas' suggestion about jurisdiction as a non-party Rule 60B motion, and applied the law on 60B motions to determine that because Las Vergenas was not a party or its legal representative, it could not, it lacked standing to file that 60B motion, and it didn't fall into any of the exceptions for when a non-party can file a 60B. So this court should affirm, if it gets to reviewing the substance of the district court's should affirm the decisions on both the motion to intervene and the 12H3 motion. If this court were to even get to those further layers of whether the district court had subject matter jurisdiction in the original circumstance back in 1998, the district court had subject matter jurisdiction under Section 1331. Heal the Bay's claims arose under federal laws, the Clean Water Act and the APA, and all that was required was to allege a non-frivolous claim, which at the time it had, and that's all that's required to establish subject matter jurisdiction. And that subject matter jurisdiction existed even if later the court were to have ruled that Heal the Bay either failed to state a claim under 12B6, or the claim ultimately failed on the merits for some later reason. The court's clear precedents in, for example, Belle v. Hood, make clear that you don't have to allege a successful claim in order to vest the district court with jurisdiction, the power to adjudicate those colorable claims. If there are no further questions, I'll rest. Thanks. Two things, Your Honors. First, neither appellee provided any explanation for why the court had subject matter jurisdiction in 2010 when it amended the consent decree. The assertion that all that's required is a colorable federal claim is just flat wrong because there's a question here of sovereign immunity. Now, for most immunities, that's not jurisdictional and they'd be correct, but sovereign immunity, as this court held in the Richardson case, sovereign immunity is a jurisdictional question and absent sovereign immunity, the act of the court is void. They just admitted the EPA's action was discretionary. Is, does the question of jurisdiction over a claim that may be subject to sovereign immunity depend on whether the sovereign invokes it? No, Your Honor, because the sovereign immunity cannot be waived except by Congress. So the fact that the sovereign's representative of the EPA doesn't invoke it in court is totally irrelevant. Only Congress, by statute, can waive sovereign immunity, and we briefed that in our papers. I would note also this notion that somehow the statute set a time limit. In Arbaugh versus YNH Corporation, the Supreme Court noted, quote, the objection that a federal court lacks subject matter jurisdiction may be raised by a party or by a court on its own initiative at any stage in litigation, even after trial and the entry of judgment. There is no, and of course, that's what the subsequent 12H3 cases talk about for non-parties. There is no time limit, because this goes to the power and validity of the court's act. If the court has no subject, first off, the court is required to make sure it has subject matter jurisdiction. All we've heard in this case from the other side are a litany of excuses as to why the district court didn't need to do that, but the court has an unflagging duty itself to make sure it has jurisdiction, just as this court has to decide that an appeal is timely. That duty was not complied with, and there's no argument before the court. You can make an argument, perhaps, in 98 that the law was unclear. That would ignore the fact that, as this Court said in Hadro, jurisdictional rules are retroactive. They're not just prospective. So we now know, because of Baykeeper, that there was no jurisdiction. But even if you were to concede the argument, by 2010, when they rushed to court and amended the consent decree to include the current TMDL that's at issue, it was clear that there was no jurisdiction because there was no nondiscretionary act. They should not have gone into court in 2010. The court at that time should have itself looked at the jurisdictional issue. The court should have looked at the jurisdictional issue and re-raised it, both on intervention and on the 12H3 motion. And frankly, even if the court was correct in denying our participation, the court still had its own duty to determine whether it had subject matter jurisdiction. And this court should provide a remedy for the fact the court failed to do that. Thank you, Your Honor. All right. Thank you very much, counsel. Hill, the Bay v. EPA is submitted.
judges: Wardlaw, Bybee, Bell